IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| CHRISTIAN ALEXIS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY BRITOS AND WILLIAM ALEXIS, *et al.*, <br><br> Defendants. | Civil Action No.: WDQ-02-2632 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Come now the Plaintiffs, Christian Alexis, and his parents Nancy Britos and Williams Alexis, by and through counsel, Holly L. Parker, and Parker & Starbuck, P.C. and oppose Defendants' Motion for Summary Judgment, and in support thereof state as follows:

**I.    INTRODUCTION.**

Christian Alexis is a disabled child as defined by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  As such, Christian is entitled to the provision of a free appropriate public education ("FAPE") based upon an individualized education plan ("IEP") designed to meet his unique special education needs.  Christian and his parents, Nancy Britos  and William Alexis, ("parents") brought this action in response to the failure of Defendants, the Board of Education of Baltimore County ("the school system" or "BCPS"), to provide Christian with the FAPE during the 1999-2000 and 2000-01 school years.

The school system's Motion for Summary Judgment asserts that the facts, as found by the Sondra L. Spencer, Administrative Law Judge ("ALJ"), are not in dispute and that BCPS is therefore entitled to judgment as a matter of law, under Fed. R. Civ. P. 56(c).  But, BCPS presents no meritorious argument for the granting of summary judgment.  Moreover, BCPS

makes no mention of the fact that the very services the parents advocated were necessary and appropriate for Christian in the public setting, and BCPS refused to provide prior to the due process hearing, are the services he is receiving in a public school today.

A review of the many issues in this case and the arguments set forth in BCPS' motion will reveal that there is relevant and additional information that must be considered by the Court, as well as substantial and genuine issues of material fact before this Court which remain in dispute and unresolved by the administrative law judge ("ALJ").

## II.  ADDITIONAL INFORMATION PRECLUDES DISMISSAL OF THIS MATTER BY SUMMARY JUDGMENT.

Under the IDEA, in an action brought for review of administrative proceedings, the district court:

> shall receive the records of the administrative proceedings, **shall hear additional evidence at the request of a party**, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. §1415(e)(2) (emphasis supplied).

The Court is required to make an independent decision based upon the preponderance of the evidence, giving due weight to the findings of fact at the administrative level.  However, under the standard enunciated in *Doyle*, the findings of the administrative law judge may be rebutted by additional evidence.  *Doyle v. Arlington County School Bd.*, 953 F.2d 100 (4th Cir. 1991).  The holding in *Doyle* substantiates the provisions of 20 U.S.C. §1415(e)(2) that requires the Court to hear additional evidence at the request of a party.

Any  interpretation of the law which fails to recognize the Plaintiffs' right to present additional evidence voids the express right of appeal to the federal courts provided by the IDEA. If a party cannot rebut the findings of the administrative law judge with additional evidence, and those findings are entitled to a presumption of *prima facie* correctness, the process of appeal to this Court, as provided by the IDEA, would amount to no more than a rubber stamp on the

administrative decision. Failure to permit rebuttal of the findings of an ALJ with additional evidence is contrary to the requirement that the reviewing court conduct independent review based upon the preponderance of the evidence. Further, such refusal would render completely meaningless the provisions of 20 U.S.C. §1415(e)(2) that the court *shall* hear additional evidence at the request of a party.

Through its motion for summary judgment, Defendants have implied that the decision of the ALJ is entitled to such a presumption of *prima facie* correctness that no additional evidence relating to these issues need be presented. In reality, Plaintiffs' right to present such additional evidence presents a strong rationale for the Court to rule against summary judgment, as additional evidence may strengthen Plaintiffs' claims on those issues of fact that Defendants have alleged either do not exist or are not material.

Courts reviewing administrative decisions are required to make an independent decision based upon the preponderance of the evidence, giving due weight to the findings of fact at the administrative level. But, this standard must not be applied to the exclusion of all but the administrative decision; instead, it stands for the proposition that a court must weigh *all* evidence. *See Doyle*, 953 F.2d 100 (providing that "due weight" should not be construed to confer sole influence to administrative decisions); *Susan N. v. Wilson School Dist*. 70 F.3d 751, 760 (3d Cir. 1995) (holding that a district court may not summarily exclude additional evidence offered pursuant to 20 U.S.C. §1415(e)(2), since a district court "must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved.").

This Court very clearly elucidated the standard regarding when additional evidence will be allowed as follows:

> "The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."
> Town of Burlington v. Dept of Educ. of Mass, 736 F.2d 773, 790 (1st Cir. 1984),

> aff'd, 471 U.S. 359, 105 S. Ct. 1996 (1985).
>
> MCPS argues that the recent placement of Justin at KTS is not "additional evidence" within the meaning of 20 U.S.C. § 1415(e)(2). The Court disagrees. Such evidence properly supplements the record by giving the Court a complete picture of the child's needs and whether KTS could meet his special needs. See Mavis v. Sobol, 839 F. Supp. 968, 979 (N.D.N.Y. 1993). Similarly, the information could not have been introduced during the administrative hearing as the placement was subsequent to the ALJ's decision. Cf. King v. Board of Educ. of Allegany County, Maryland, 999 F.Supp. 750, 775 (D. Md. 1998).
>
> Equally important, the new IEP placement for Justin does not qualify as the type of evidence traditionally excluded by courts. This information was not available to the parents at the time of the administrative hearing nor can the evidence be characterized as repetitive or embellished witness testimony. See Springer,134 F.3d at 667 (approving "the exclusion of testimony from all who did, or could have, testified before the administrative hearing"). After reviewing the administrative record and the additional evidence submitted by the parents, the Court finds that the parents have shown that a genuine dispute of material fact exists as to whether KTS was an appropriate placement for Justin in the 1998-1999 school year.

*Justin G. v. Board of Educ. of Montgomery County*, 148 F. Supp. 2d 576, 155 Ed. Law Rep. 346 D.Md. (2001).

In this matter, the evidence that should be considered by the Court falls into two categories, the first of which constitutes actions taken by the school system following the due process hearing.  The second is testimony and evidence excluded by the hearing office during the due process hearing.

    **A.**    **BCPS' POST HEARING PLACEMENT OF CHRISTIAN IN AN APPROPRIATE BCPS PUBLIC PLACEMENT SHOULD BE CONSIDERED BY THE COURT AS ADDITIONAL EVIDENCE.**

Following the due process hearing, the Parents and the school system met and agreed upon a public school setting and services that exceeded those previously offered prior to the hearing, and which were virtually identical to those requested by the parents prior to the hearing.  Because the school system was able to provide Christian with the level of services necessitated by his disability, the parents returned him to the public school system.

During the hearing, the parents advocated that Christian required a setting that provided him with extensive of special education and teacher support throughout the day and the direct

4

intervention of a certified speech and language pathologist. Tr. p. 310. BCPS only offered him 7 hours direct and 5 hours indirect special education service in 2001, and no speech and language service. Decision, p. 8. As noted by the Decision, Christian demonstrated "no progress in the IEP objectives involving use of phonic and structural analysis to decode familiar words" but received private tutoring at parental expense from July through November 2001[1]. Decision, p. 9. Following the Decision, BCPS developed and IEP for Christian which provides for 13 hours of direct and 2 hours indirect special education services, 1.5 hours of direct and .5 hours of indirect speech and language services each week. Exhibit A.

      B.      THE ALJ IMPROPERLY EXCLUDED EVIDENCE FROM CONSIDERATION

           1.      DR. BOATMAN'S EVALUATION

At the onset of the hearing, counsel for the Plaintiffs indicated that the parents had previously presented BCPS with Dr. Boatman's October 2001, Summary of Central Auditory Test Results. Tr. pp. 15 - 18. Although there was discussion regarding the status of this report, there was no definitive ruling regarding its relevance. It was marked as Parent 1, and the hearing proceeded. It is unclear whether the ALJ considered the evaluation, as a reference is made to it, but appears to be related to testimony of another witnesses. p. 11.

Clearly, Dr. Boatman's evaluation is relevant and probative and should be considered by the Court. This evaluation confirmed the parents' ongoing reports to the school system that Christian suffered from an "an auditory processing disorder" including a "phoneme processing and short-term auditory" processing difficulties, all of which were negatively affecting academic achievement. Dr. Boatman made several recommendations including classroom and therapeutic recommendations[2].

---

[1] The ALJ did not order reimbursement for the private tutoring although it is clear that Christian was not benefiting from special education.

[2] Dr. Boatman's evaluations is included with the Complaint as Exhibit F.

2. THE MOTHER'S TESTIMONY.

Rather than allowing witnesses, most relevantly, the mother's testimony, the ALJ inappropriately interrupted testimony and prevented witnesses from fully answering questions presented. For example, the during the mother's testimony:

    Q. So in fact you were aware - - or the team made you aware of Christian's deficits, particularly in the area of perception and auditory memory, isn't that true?
    A. Deficits, but they did not -
    JUDGE:   No.
    WITNESS: - tell -
    JUDGE:   No.
    WITNESS:  - me -
    JUDGE:   No.
    WITNESS:  – what -
    JUDGE:  No.
    WITNESS - his -
    JUDGE: No.
    WITNESS - his -
    JUDGE: No.
    WITNESS: - learning -
    JUDGE: No.
    WITNESS: -disability was.
    JUDGE: You need to answer the question.
    MS. PARKER: Objection - -
    JUDGE: Okay.
    MS. PARKER: – Your Honor. I believe that there's been two separate questions–
    JUDGE: No.
    MS. PARKER –and maybe that –
    JUDGE: No. Ms Parker. What I believe is, is that this witness is hearing they didn't tell me what the learning disability is, and not listening to the question. And- - and – and granted this time the – the – the word used was deficit, not disability, so you – but – so you need to – to listen to the question that's asked.
    WITNESS: Okay.
    JUDGE: Okay.
    WITNESS: It's my –
    JUDGE: And –
    WITNESS: —auditory
    JUDGE: it -
    WITNESS: – processing issue.

Transcript. p. 246.

The mother's testimony was further inhibited, by objections that were inappropriately sustained, questions restated by the ALJ to render the original question meaningless or

6

interruptions that unduly impeded the trial process. Transcript pp. 218, 220, 230, 239, 241, 245, 251, 253, 255, 271, 274, 279, 282, 292, 297, 324, 328, 345, 352, 355, 378, 388, 400, 407, 429, 432, 437, 440, 454, 456, 466, 479, 506, 507, 510, 518. The ALJ created an atmosphere of conflict, confusion and contention that made it impossible for the parents to fully articulate their position. The ALJ's conduct during the hearing had a chilling and limited affect on the testimony offered.

**III.   THE ALJ MADE FINDINGS AND DETERMINATIONS WHICH ARE INCONSISTENT AND CONTRARY TO LAW.**

In its review of the administrative record, a district court is not required to accord absolute deference to the decision of the ALJ. While the Court does have to give "due weight" to the hearing officer's decision, "the [C]ourt must [also] independently evaluate" the facts contained in the administrative record, from both witnesses' testimony and evidence. *Heather S.*, 125 F.3d at 1053. Thus, it would be improper for the Court to accept as absolute fact either the factual findings in the administrative decision, or the decision itself. Rather, before determining whether factual disputes exist, a proper analysis must first consider all of the evidence.

After an analysis of all of the evidence, the Court can make a determination of whether the ALJ erred in his or her decision, or departed from the normal decision-making process. Should this Court determine that the ALJ did make findings of fact or a decision in error, the Court should not accord the decision any deference. Plaintiffs maintain that these are the circumstances in the present case.

While courts are required to make an independent decision based upon the preponderance of the evidence, due weight needs to be given only to the *regularly made* findings of fact at the administrative level. *Doyle v. Arlington County School Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). The Fifth Circuit has considered the amount of deference which is due when the administrative fact finder fails to appropriately assess the facts or apply the law. The court held:Although the district court is directed by the statute to give the [ALJ's factual] findings "due weight," the statute does not state that the district court must defer to those findings when its own review of

the evidence indicates that [the administrative fact finder] erroneously assessed the facts or erroneously applied the law to the facts. *Teague Independent School Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993) (citations omitted) (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051); *see also Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200 (4th Cir. 1990); *Hudson v. Wilson*, 828 F.2d 1059 (4th Cir. 1987); *Board of Educ. of Community Consol. Sch. Dist. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 716 (7th Cir. 1991), *cert. denied*, 502 U.S. 1066, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992). This holding instructs that courts need not recognize administrative decisions as *prima facie* correct, but need only allow these decisions a degree of significance proportionate to the magnitude and relevance of the rest of the evidence. A lesser degree of deference is especially warranted when, as in this case, the administrative determination is based on erroneous findings of fact, or misapplies or ignores legal authority.

      This Court must evaluate all of the evidence to determine whether issues of fact exist, and may not merely rest on the findings of fact as determined by the ALJ. *See Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988) (holding, "The district court's authority under [20 U.S.C.] § 1415(e) to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggests less deference than is conventional [in the review of agency actions].") As specified below, the ALJ deviated from law, failed to reconcile evidentiary inconsistencies, failed to consider relevant evidence, and failed to make determinations consistent with legal authority. Disposition of this matter through summary judgment is inappropriate.

    **A.**    **A LACK OF PROGRESS OVER HALF A SCHOOL YEAR IS EVIDENCE OF A DENIAL OF FAPE.**

      The "primary vehicle" of the IDEA is the individualized educational program. *Honig v. Doe*, 484 U.S. 305, 310 (1988). The IEP is developed specifically for the child by the local school district, the child's teacher, the parents or guardians, and, where appropriate, the child. 20 U.S.C. §§1401(11) and 1414(d). "The IEP sets out the child's present educational performance,

establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig*, 484 U.S. at 311. The IDEA and Maryland law require the school system to develop an individualized educational program for each disabled child within its jurisdiction. 20 U.S.C. §1414(d) (5). The expectation is that, if goals and objectives are properly drafted, a child should be able to achieve the majority of the goals in a year's time given proper instruction and intervention. If the majority of the goals are not met then it is reasonable to assume that, in absence of other intervening factors (e.g., excessive illness and absences), that it is due to either improper instruction or the child's need for a more restrictive environment, both which point to a denial of FAPE.

The ALJ determines that Christian *did not* make progress during the last half of the 2000-01 school year, but *does not* conclude find that this constituted a denial of FAPE. Decision, p. 9, ¶ 26. There were not intervening factors. Christian was not ill or excessively absent. In fact, the ALJ even admits that the teacher recognized that Christian was not making progress and began taking steps to remedy the lack of progress. Clearly Christian was denied FAPE[3].

### B. BCPS WAS CLEARLY REQUIRED TO REVIEW THE PARENTS' OUTSIDE CAPD EVALUATIONS AND REVISE CHRISTIAN'S IEP ACCORDINGLY.

ALJ Spencer erroneously determined that, although provided and requested by the parents, BCPS did not have any obligation to review the CAPD evaluation, nor did BCPS have any obligation to review or revise the Child's IEP in December 2001. Decision, p. 23. All Maryland Local Education Agencies ("LEA"s) are required by federal and State law to abide by the provisions of the IDEA and the implementing State regulations. COMAR states that the "public agency shall ensure that an IEP team meets to develop an IEP for a student with a disability within 30 days of the evaluation. . . . [and] in developing an IEP for a student with a

---

[3] Whether or not the steps the teacher took to remedy the denial of FAPE were reasonable or not is another issue, but the parents are entitled to a ruling that a denial of FAPE occurred.

9

disability, the IEP team shall consider. . . [the] results of the evaluation; . COMAR 13 A.05.01.08A(1) and (2)(c). This requirement is mandatory, and there is no exception. Thus ALJ's Spencer's ruling was flawed. BCPS could not refuse to review the CAPD evaluations, and in fact, was required by law to do so. Failure to do so was a violation of Christian's rights under the IDEA.

### C. CHRISTIAN'S IDEA RIGHTS CONTINUED AFTER HE WAS REMOVED FROM PUBLIC SCHOOL.

ALJ Spencer erroneously concluded that BCPS was not required to develop or revise Christian's IEP following his placement at Lab. Decision, p. 23. The importance Congress and the courts have attached to the educational agency's compliance with procedural rules is clear and unequivocal. Most significantly, failure to do so, as occurred here, has been held to be a violation of the IDEA entitling the parents and child to relief. The parents' removal of Christian from BCPS' on November 4, 2001, did not alleviate the school system of its statutory duty to Christian under the IDEA or Maryland law as the ALJ wrongfully asserts.

BCPS had an affirmative and continuing responsibility to continue and conclude all testing, and make a FAPE available to Christian should he wish to return to BCPS. 20 U.S.C. § 1414(d)(2) states:

> At the beginning of each school year, each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in its jurisdiction, an individualized education program.

Even if a child has never been in a public school, BCPS is still required to locate:

> All children with disabilities residing in the State, including children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

20 U.S.C. § 1412(a)(3)(A). When presented with the private evaluation, and a request to develop

an IEP for the 2001-02 school year, the school system clearly had an obligation to do so. Moreover, under 20 U.S.C. § 1412(a)(10)(A)(i) BCPS has a continuing obligation provide measure of services to its disabled students, even if they are privately placed by their parents.

### D.  SUMMARY

The misapplications of the law at the very least create genuine issues of material fact, and render Defendants' Motion for Summary Judgment inappropriate.  An appropriate action could include a remand of this matter back to the ALJ with instruction to render her decision with an appropriate application of the law to the facts.

## VI.  CONCLUSION.

For the foregoing reasons, the Court should deny BCPS' Motion for Summary Judgment. Plaintiffs have demonstrated that Defendants violated both their substantive and procedural rights under the IDEA.  They have demonstrated, at the very least, that the record contains genuine issues of material fact, inconsistent findings of fact, and unreconciled factual issues that bear on their claims.

Respectfully submitted,
Parker & Starbuck, P.C.

By:_____
Holly L. Parker #13302
Attorneys for the Plaintiffs
10722 Lexington Street
Kensington, MD 20895
(301) 929-5900

### CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June 2003 a copy of the forgoing Plaintiffs' Opposition to Defendants' Motion for Summary Judgment was served by first class mail, postage pre-paid on Eric W. Gunderson, Hodes, Ulman, Pessin & Katz, P.A.,901 Dulaney Valley Road, 4th Floor Towson, MD 21204.

_____
Holly L. Parker