IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

CHRISTIAN ALEXIS, et al.,         *

       Plaintiffs,            *

v.                              Civil Action No. WDQ-02-2632

                           *

BOARD OF EDUCATION OF
   BALTIMORE COUNTY, et al.,    *

       Defendants.         *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

The Board of Education of Baltimore County ("the Board") and Joe A. Hairston, Defendants, by their undersigned counsel, submit this Memorandum in reply to the Plaintiffs' Opposition to Motion for Summary Judgment and state as follows:

## I.    SUPPLEMENTAL STATEMENT OF FACTS

46.    On May 9, 2002, while Christian was attending the Lab School, Christian's IEP Team met with Christian's Parents to review and revise Christian's IEP.  It was agreed that Christian would receive nine (9) hours of combined (direct and indirect) classroom instruc tion, two (2) hours of combined (direct and indirect) speech and language instruction, and consultative audiological services. (See IEP Team Summary, dated May, 9, 2002, attached hereto as **Exhibit 4**; see IEP, dated May 9, 2002, attached hereto as **Exhibit 5**).

47.    On May 30, 2002, the IEP Team met with Christian's Parents to review and sign the May 9, 2002 IEP and agreed that if Christian were to re-enroll in public school the services set forth in the

May 9, 2002 IEP would be provided. (See IEP Team Summary, dated May 30, 2002, attached hereto as **Exhibit 6**).

48.    On November 11, 2002, the IEP Team again met with Christian's Parents to review his IEP and agreed that Christian's IEP Team will meet again in December to again revise and complete his IEP. (See IEP Team Summary, dated November 11, 2002, attached hereto as **Exhibit 7**).

49.    During October and November, 2002, psychological, educational, and speech and language assessments were conducted by the Board. (See BCPS Psychological Assessment, dated October 25, 2002, attached hereto as **Exhibit 8**; see BCPS Educational Assessment, dated November 15, 2002, attached hereto as **Exhibit 9**; see BCPS Speech and Language Assessment, dated November 20, 2002, attached hereto as **Exhibit 10**).

50.    On December 2, 2002, Christian's IEP Team met with Christian's Parents to discuss the assessments that were conducted by the Board.  It was agreed that if Christian were to be re-enrolled in public school, an IEP Team would meet to review the special education services to be provided and develop a new IEP. (See IEP Team Summary, dated December 2, 2002, attached hereto as **Exhibit 11**).

51.    Prior to the third quarter of the 2002-2003 school year, Christian was re-enrolled in public school and was placed at his home school, Dumbarton Middle School.

52.    On February 3, 2003, Christian's IEP Team met with Christian's Parents and an new and revised IEP was developed.  It was agreed that Christian would receive 15 hours of combined (direct and indirect) classroom instruction, two (2) hours of combined (direct and indirect) speech and language instruction, and consultative audiological services. (See IEP Team Summary, dated February 3, 2003, attached hereto as **Exhibit 12**; see IEP, dated February 3, 2003, attached hereto as **Exhibit 13**).

53.     On April 28, 2003, Christian's IEP Team met with Christian's Parents to review Christian's progress.  The IEP Team noted that Christian's transition to Dumbarton Middle School was going well, he was happy there, and he was making progress in his speech instruction. (See IEP Team Summary, dated April 28, 2003, attached hereto as **Exhibit 14**).

54.     In fact, during the third and fourth quarters of the 2002-2003 school year, Christian progressed in all of his speech and language objectives. (See Quarterly IEP Progress Report of Speech and Language Pathologist, attached hereto as **Exhibit 15**).


II.    **SUMMARY JUDGMENT IS STILL WARRANTED EVEN IN LIGHT OF THE ADDITIONAL EVIDENCE PROFFERED BY PLAINTIFFS.**

In Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Opposition"), the Plaintiffs attempt to introduce additional information for this Court's consideration which, the Plaintiffs seemingly argue, supports a denial of the Defendants' summary judgment motion. However, as explained below, summary judgment is still warranted even in light of this additional information.

A.    **The Fact That The Board Currently Provides Christian With Special Education Services That Exceed Those Services Provided Under the January 2001 IEP Does Not Mean That The January 2001 IEP Was Inappropriate.**

Plaintiffs first contend that because the Board is currently offering Christian special education services that exceed those services provided under the January 2001 IEP that the January 2001 IEP must not have been appropriate, i.e. that it was not reasonably calculated to enable Christian to receive educational benefits.  However, courts assess whether an IEP is substantively appropriate not by looking at the particular services offered but by looking at whether the child made actual progress during its implementation. See Waller v. Board of Education of Prince George's County, 234 F. Supp.2d 531, 541

(D. Md. 2002) (noting that special education services "must be likely to produce progress" and that progress is measured by looking at "objective factors, such as actual educational progress, to avoid substituting the court's judgment for that of school authorities").  Here, the ALJ found, and correctly so, that Christian made actual progress and did in fact receive educational benefit from the special education services provided under his January 2001 IEP. (See Decision, **Exhibit 1**, p. 25; see also Section IV.A.3 of Defendants' Memorandum In Support of Motion for Summary Judgment).

Moreover, the appropriateness of the January 2001 IEP should be assessed in light of what was known to the Board at the time it was developed.  Based upon the evaluations and assessments that were conducted at the time the January 2001 IEP was developed,[1] separate speech and language instruction was not deemed necessary.  Nevertheless, the ALJ found that the January 2001 IEP was appropriate since it included speech and language objectives relating to Christian's auditory processing difficulties. (See Decision, **Exhibit 1**, p. 26).   Therefore, the fact that the Board is providing Christian with separate speech and language instruction now does not mean that it failed to provide him with a FAPE during the 2000-2001 school year.

**B.    Notwithstanding The Fact That Dr. Boatman's Evaluation Was Not Improperly Excluded From Testimony, The Evaluation Does Not Require a Finding That The January 2000 and January 2001 IEPs Were Inappropriate.**

Plaintiffs contend that the ALJ improperly excluded the independent central auditory processing (CAPD) evaluation conducted by Dr. Dana Boatman.  However, as noted by the ALJ in his decision, Dr. Boatman's evaluation was never ***offered*** by the Plaintiffs to be admitted into evidence. (See **Exhibit 1**,

---

[1] Defendants remind the Court that the ALJ properly concluded that the Board did not violate the procedural requirements of the IDEA by not conducting certain central auditory processing evaluations demanded by Christian's Parents.  The evaluations and assessments that were conducted by the Board were deemed to be sufficient by the ALJ. (See Decision, **Exhibit 1**, pp. 20-21).

p. 27 n. 5).  The evaluation was marked as an exhibit, but it was never offered into evidence.  (See

**Exhibit 3**, Vol. I, pp. 15-18).  Therefore, it cannot be said that the ALJ improperly excluded it.

Moreover, because the evaluation, or for that matter the testimony of Dr. Boatman, was never offered into evidence at the administrative level, the Plaintiffs cannot offer the evidence now in this cause of action.  The Fourth Circuit has made it clear that it has taken a "strict approach" to the admission of additional evidence in IDEA cases and has held that evidence or testimony which could have been admitted into evidence at the administrative level but was not admitted is to be excluded from the court's consideration.  See Springer v. The Fairfax County Sch. Bd., 134 F.3d 659, 667 (4th Cir. 1998) (upholding the district court's decision not to consider a psychiatric evaluation as "additional evidence" where the evaluation was not offered at the administrative hearing and the psychiatrist did not personally testify, even though both were available).   The Fourth Circuit reasoned that the exclusion of such evidence not offered at the administrative level "encourages thorough administrative review of special education disputes" and "facilitates the resolution of these disputes sooner rather than later, and in so doing advances the aims of Congress in this statute."  Id.

Even so, the Plaintiffs have failed to show why Dr. Boatman's evaluation requires this Court to find that the January 2000 and January 2001 IEPs were inappropriate.  While the Plaintiffs contend that the report confirmed their belief that Christian suffered an auditory processing disorder, the Plaintiffs fail to dispute the ALJ's findings that (i) the Board's assessments and evaluation were adequate (and that the Board was not required to conduct a CAPD test as requested by the parents), and (ii) the January 2000 and January 2001 IEPs were reasonably calculated to enable Christian to receive educational benefits since Christian showed actual progress in almost all of his objectives and goals during the 1999-

2000 and 2000-2001 school years.[2]   Moreover, Dr. Boatman's evaluation was made available to the

Board well after the January 2000 and January 2001 IEPs were developed, so it is not at all probative as

to whether those IEPs were properly developed or implemented.

> ### C.  Notwithstanding The Fact That The ALJ Did Not Improperly Exclude Testimony of Christian's Mother, The Plaintiffs Fail To Supplement The Record With Testimony That Shows Why Summary Judgment Should Be Avoided.

The Plaintiffs also contend that the ALJ improperly inhibited or excluded various testimony of

Christian's mother during her examination at the administrative hearing.  Specifically, the Plaintiffs

direct this Court's attention to pages 245-246 of the transcript in which the ALJ interrupted Ms. Britos'

testimony when she was attempting to answer a question.  However, a review of this portion of the

transcript reveals that Ms. Britos, who was asked about her awareness of Christian's auditory *deficits*,

began discussing Christian's *leaning disability* which was not responsive to the question.  The ALJ was

simply attempting to get Ms. Britos to answer the question being asked.  Moreover, later in her

examination Ms. Britos was able to continue with her testimony about her knowledge of Christian's

deficits and learning disability. (See **Exhibit 3**, Vol. II, pp. 248-250).

Even so, the Plaintiffs have not proffered to this Court any additional testimony, through an

affidavit by Ms. Britos or otherwise, that would supplement the administrative record to show that

summary judgment should not be entered.  The Plaintiffs argue that they were not able to fully articulate

their position on the issues raised, but do not articulate to this Court what facts or testimony they were

unable to present.   The Plaintiffs essentially ask this Court to engage in speculation and infer that some

additional testimony would have aided their case, but a party cannot create a dispute of fact through

mere speculation or inference. See Justin G. v. Board of Educ. of Montgomery County, 148 F. Supp.2d

---

[2] The Plaintiffs do contend that Christian's lack of progress during the third and fourth quarters of the 2000-2001 school year evidences a denial of FAPE.  That contention is addressed in Section II.B., infra.

576, 583 (D. Md. 2001) (holding that a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences, but must present evidence of specific facts, by affidavit or otherwise, that would allow a fact finder to find for him or her).  Moreover, the Plaintiffs have simply failed to provide any additional evidence with respect to Ms. Britos' testimony that aides them in overcoming the presumption that the ALJ's decision was correct.

III.    **THE ALJ'S FINDINGS WERE BASED ON ACCURATE STATEMENTS OF THE LAW, WERE WELL-REASONED, AND WERE THOROUGHLY SUPPORTED BY THE EVIDENCE.**

   A.    **The Plaintiffs Misstate the Fourth Circuit's Standard of Review of Administrative Decisions Under the IDEA.**

   As a preface to their argument that the ALJ's findings were contrary to law, the Plaintiffs, citing the Fifth Circuit's decision in <u>Teague Indep. Sch. Dist. v. Todd L.</u>, 999 F.2d 127 (5th Cir. 1993) and the Seventh Circuit's decision in <u>Heather S. v. State of Wisconsin</u>, 125 F.3d 1045 (5th Cir. 1997), contend that this Court is not required to "accord absolute deference" to the decision of the ALJ and that the ALJ's decision is not to be considered *prima facie* correct.  However, as noted by the Fifth Circuit in <u>Teague</u>, both the Fifth and Seventh Circuits give only "due weight" to administrative decisions whereas the Fourth Circuit is the only circuit "which explicitly treats the special education hearing officer's decision as ***presumptively correct***." <u>Teague</u>, 999 F.2d at 131 n. 13 (citing <u>Doyle v. Arlington County Sch. Bd.</u>, 953 F.2d 100 (4th Cir. 1991)) (emphasis added).  Therefore, as stated in Defendants' opening memorandum, this Court must accept the ALJ's decision below as *prima facie* correct and "[t]he burden of proof when they challenge the presumed correctness of the ALJ's findings is upon the parents." <u>S.M. v. Weast</u>, 240 F. Supp.2d 426, 432 (D. Md. 2003).

**B.     The Fact That Christian Showed Lack of Progress During Half A School Year In One Short-Term Objective Does Not Require a Finding That He Was Denied FAPE.**

Pointing to the ALJ's findings that Christian showed lack of progress over the latter half of the 2000-2001 school year, the Plaintiffs argue that the ALJ erred by not concluding that this lack of progress constituted a denial of FAPE.  However, the ALJ found that Christian showed lack of progress in his short-term objective involving the use of phonics and structural analysis to decode unfamiliar words. (See Decision, **Exhibit 1**, p. 25).  This is one of 17 short-term objectives stated in Christian's IEP. (See **Exhibit 2**, January 2001 IEP, BCPS Exhibit 17, pp. 3-5).   Clearly, lack of progress for half a year in only one of 17 objectives does not constitute a denial of FAPE. See e.g. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233, 144 F.3d 692 (10th Cir. 1998) (finding that although plaintiff had not met most of her short-term objectives, she exhibited enough progress to show that she had received educational benefit from the special education services thus dismissing a claim that she was denied FAPE).  Therefore, the ALJ's decision finding that the Board had provided FAPE was not contrary to law and clearly within sound reason.

**C.     The Board Met Its Obligations Under the IDEA To Conduct Continuing Evaluations of Christian And To Continually Develop His IEP After His Parents Unilaterally Placed Christian In Private School.**

The Plaintiffs also contend that the ALJ erred by concluding that the Board had not committed a procedural error by failing to develop a current IEP during Christian's placement in private school.  The Plaintiffs contend that following the Board's receipt of Dr. Boatman's evaluation it should have conducted a reevaluation of Christian and revised his IEP to account for his auditory deficits.  However, the Board did in fact conduct evaluations of Christian and revised his IEP following his unilateral placement in private school.

During Christian's placement at the Lab School, Christian's IEP Team met with his parents and revised his IEP. (See **Exhibits 4 and 5**).  It was agreed that if Christian were to be re-enrolled in public school the Board would provide nine (9) hours of combined (direct and indirect) classroom special education instruction, two (2) hours of combined (direct and indirect) speech and language instruction, and consultative audiological services.  Christian's Parents agreed to and signed the May 9, 2002 IEP (See **Exhibits 5 and 6**).

During the latter part of 2002, in compliance with the Board's obligation to reevaluate Christian every three (3) years, see 34 C.F.R. § 300.536, the Board conducted psychological, educational, and speech and language assessments. (See **Exhibits 8-10**).  Christian's IEP Team again met with Christian's Parents to discuss the results of the assessments and agreed that if they were to re-enroll Christian in public school an IEP Team would meet and develop a new IEP for Christian. (See **Exhibit 11**).

In fact, following Christian's re-enrollment in public school for the second half of the 2002-2003 school year, Christian's IEP Team met again with Christian's Parents and developed a new IEP that provides Christian with 15 hours of combined (direct and indirect) special education classroom instruction, two (2) hours of combined (direct and indirect) speech and language instruction, and consultative audiological services. (See **Exhibits 12 and 13**).  Again, Christian's Parents agreed to and signed the February 3, 2003 IEP.

Moreover, to the extent that the Plaintiffs argue that the Board committed procedural error by failing to review and revise Christian's IEP to reflect the findings of the CAPD evaluation conducted by Dr. Boatman, it should be noted that the May 2002 and February 2003 IEPs developed for Christian

both implement the accommodations recommended by Dr. Boatman in her written findings.  Dr.
Boatman recommended the following classroom aides:

- "receiving verbal directions one at a time"

- "use of repetition and rephrasing to confirm comprehension"

- "same information is presented in multiple modalities (auditory + visual)"

- "preferential classroom seating"

- "having additional time to respond to verbal questions."

(See Evaluation by Dr. Boatman, dated October 16, 2001, attached hereto as **Exhibit 16**).

The IEPs developed for Christian provide the same aides and accommodations recommended by
Dr. Boatman, including, among others:

- "repetition/rephrasing and chunking of directions"

- "multisensory reading instruction"

- "extended time for processing"

- "preferential seating near instruction"

(See **Exhibits 5 and 13**).

Therefore, the Plaintiffs' contention that the Board failed to review and revise Christian's IEP in
light of the findings of Dr. Boatman is undermined by the fact that the IEPs developed for Christian
implement the specific accommodations Dr. Boatman recommended.  It is well established that a
procedural violation amounts to a denial of FAPE only when it actually interferes with the provision of
special education services or otherwise prevents the child from receiving some educational benefit. See
Hanson v. Smith, 212 F. Supp.2d 474, 485 (D. Md. 2002) (finding that even if a procedural violation
exists, such as a failure to conduct a re-evaluation, there is only a denial of FAPE if the violation

actually interferes with the provision of special education services or with the child's ability to receive educational benefit); Waller, 234 F. Supp.2d at 540 (same).  Here, any failure by the Board to review Dr. Boatman's evaluation and/or revise Christian's IEP in light of Dr. Boatman's findings obviously did not prevent the Board from providing appropriate educational services since the IEPs developed for Christian implemented the specific accommodations Dr. Boatman recommended.  Moreover, once the IEPs were implemented, Christian showed exceptional progress in all of his speech and language objectives. (See **Exhibits 14 and 15**).

## IV.    CONCLUSION

Defendants Board of Education of Baltimore County and Joe A. Hairston respectfully request that this Court enter summary judgment in their favor and dismiss, with prejudice, each of the Plaintiffs' claims asserted under the IDEA, Section 504, Section 1983, and the Maryland Special Education Law.

Respectfully submitted,

/s/

_____
Leslie Robert Stellman
Fed. Bar No. 1673
Hodes, Ulman, Pessin & Katz, P.A.
901 Dulaney Valley Road
Suite 400
Towson, Maryland 21204
410.938.8800
(signed by Eric W. Gunderson with permission of Leslie R. Stellman)

/s/

_____

Eric W. Gunderson
Fed. Bar No. 26319
Hodes, Ulman, Pessin & Katz, P.A.
901 Dulaney Valley Road
Suite 400
Towson, Maryland 21204
410.938.8800

**ATTORNEYS FOR DEFENDANTS**

G:\files\ERIC\MABE\Alexis\Reply Memorandum - MSJ.doc