FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR AND
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

2003 OCT -6 P 4: 40

AT BALTIMORE
_____DEPUTY

|  |  |
|---|---|
| CHRISTIAN ALEXIS, et al. | * |
| Plaintiffs, | * |
| v. | *    CIVIL NO.: WDQ-02-2632 |
| BOARD OF EDUCATION FOR BALTIMORE COUNTY PUBLIC SCHOOLS | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION AND ORDER

This action under the Individuals With Disabilities Education Act ("IDEA")[1], is brought by a minor child, Christian Alexis ("Christian"), and his parents Nancy Britos and William Alexis (collectively, the "parents"). The Plaintiffs seek reimbursement from the Board of Education of Baltimore County, Maryland and its superintendent, Joe A. Hairston, in his official capacity (collectively, "the School District"), for private school tuition for Christian. In addition, the parents want the School District to pay for Christian's permanent placement in private school. Compl. 15-16. For the following reasons, the

---

[1] 20 U.S.C. § 1400 et seq. (2003).

1

Defendant's motion for summary judgment will be granted.

BACKGROUND

Under the IDEA, states that receive federal funds for the education of disabled children must provide a free appropriate public education ("FAPE") to disabled children, with the goal of full educational opportunity for all. 20 U.S.C. § 1412(a)(1)-(2) (2003). Each child must receive an individualized education program ("IEP"), a written statement, particular to the child, that explains, *inter alia*, the child's current academic performance levels, education goals for the academic year, and types and amounts of special education to be provided. 20 U.S.C. § 1414(d) (2003).

Christian entered Rodgers Forge Elementary School in the second grade and attended school there until the fall of his fifth grade year. Christian worked with a reading specialist at school and with a tutor at the Sylvan Learning Center during the second grade. Def.'s Ex. 2 (Oct. 14, 1999 IEP team meeting summary). In October 1999 (Christian's third grade year), his parents met with his teachers, the school psychologist, and a reading specialist to discuss Christian's strengths and needs, and to develop an IEP for his ongoing reading problems. *Id.*

2

Christian needed to improve decoding skills, written expression, individual and peer assistance, reading, and spelling. *Id.* Christian's reading specialist noted that in spite of extensive support services, interventions, and modifications throughout the second grade, he continued to struggle with reading and writing. *Id.* Christian scored below the pre-primer level on an informal reading inventory. *Id.* The parents and school representatives agreed that Christian should undergo cognitive testing, behavioral screening, and an educational assessment. *Id.*

In December 1999, Christian's parents, teachers, and other school personnel involved with the development of his IEP (collectively, the "IEP team"), regrouped to discuss the results of Christian's tests and to establish the parameters of his IEP. *Id.* (Dec. 9, 1999 IEP team meeting summary). Christian's test results indicated overall high average cognitive abilities and no hearing disorders. A significant oral language disorder was not identified on a comprehensive oral language test but "Christian's frequent and significant [word] retrieval difficulty" was noted and the IEP team concluded that Christian had a perception and auditory memory disorder. *Id.*

The IEP team developed a plan for Christian's education based on his test results and classroom performance. In January 2000, the school's special education resource teacher reviewed the goals for Christian with his parents, and his parents approved the proposed IEP. The IEP was implemented, and Christian made progress on each of his objectives throughout the year. *Id.* (Jan. 13, 2000 IEP team meeting summary).

In January 2001 (Christian's fourth grade year), the IEP team met for an annual review of Christian's IEP. *Id.* Christian's teachers indicated that he still needed assistance decoding and making sense of what he was reading, had difficulty spelling, problems with handwriting, interpreting data, using math vocabulary to explain problems, and that he seemed to have poor visual memory. Christian's IEP was altered to respond to these problems, and his parents approved the IEP. *Id.* The new IEP was implemented, and Christian made satisfactory progress on most of his objectives throughout the year. *Id.* (June 12, 2001 IEP progress report). Christian made no progress, however, on the use of phonic and structural analysis to decode words during the two periods of the school year that followed the implementation of the new IEP. *Id.*

4

In response to this lack of progress, the parents obtained private tutoring and speech/language therapy for Christian from July through August of 2001.  ALJ Hearing Tr. 230.  In August 2001, the parents had Christian tested by a private speech/language pathologist at their expense.  Pls.' Ex. D (report of July 2001 speech and language evaluation).  The pathologist administered a variety of standardized tests and found that Christian was performing below his age level in auditory memory skills, language memory skills, receptive and expressive syntax/grammar skills, phonemic awareness skills, auditory discrimination skills, and word retrieval/verbal formulation skills.  *Id.*  Based on these findings the pathologist recommended that Christian have regular speech/language therapy sessions with a certified speech/language pathologist.  *Id.*  The parents sent a copy of the pathologist's report to the School District in September 2001.

Beginning in Christian's fifth grade year, the school provided Christian with direct one-on-one reading services using a multi-sensory approach to address his lack of improvement during the third and fourth quarters of the previous year.  Def.'s Ex. 2 (Oct. 4, 2001 IEP team meeting summary).

In October 2001, another IEP team meeting was held, and the

5

parents' pathologist attended and discussed Christian's test results. The School District's speech/language pathologist accepted the results and noted that Christian's teachers were addressing his reading and writing difficulties through the new reading program, and that goals specific to oral verbal language would be added to the IEP. *Id.* New goals and objectives were created based on this discussion. The parents also signed a permission form for Christian to be tested for central auditory processing disorders. *Id.*

Later that month, the person responsible for testing Christian phoned his mother to set up an appointment. *Id.* (Oct. 10, 2001 letter from the School District's educational audiologist to the Assistant Principal of Rodgers Forge Elementary). Christian's mother revoked her permission for the testing and stated that she was having the test performed at Johns Hopkins Hospital instead. *Id.*

Another IEP meeting was scheduled for October 25, 2001. On October 24, 2001, the School District was advised that the parents would not attend the meeting. *Id.* (Oct. 25, 2001 IEP team meeting summary).

On November 4, 2001, Christian's parents removed him from

6

Rodgers Forge Elementary and placed him in the Lab school - Baltimore Campus. Compl. 8. The Lab School is a private special education school. *Id.*

The parents requested a due process hearing in November 2001 to address their dissatisfaction with Christian's education at Rodger's Forge Elementary. *Id.* at 9. The parents asserted, *inter alia*, that the School District had failed to: (1) provide Christian with a FAPE, (2) comprehensively and appropriately evaluate Christian, and (3) identify all areas of Christian's disability. *Id.*

An administrative due process hearing began in December 2001 and concluded in January 2002. In February 2002, the Administrative Law Judge ("ALJ") decided that the Defendant had not violated the IDEA or applicable Maryland law. *Id.*

The Plaintiffs seek review of the ALJ opinion denying their requests for reimbursement from the School District and permanent placement for Christian in private school. Pending is the Defendant's motion for summary judgment.

## STANDARD OF REVIEW

When a complaint is filed in federal court under the IDEA challenging an administrative officer's opinion, the complaint is

7

subject to the Federal Rules of Civil Procedure, including the well-settled rules of summary judgment. *Hanson v. Smith*, 212 F. Supp. 2d 474, 480 (D. Md. 2002) (*citing Cavanagh v. Grasmick*, 75 F. Supp. 2d 446, 457 (D. Md. 1999)). Summary judgment requires that no issues of material fact be disputed; that the facts be viewed in the light most favorable to the non-movant; and that the movant be entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In reviewing the administrative opinion, the court examines the records of the administrative proceedings, hears additional evidence at the request of a party, and makes its decision based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B) (2003).

A motion for summary judgment in an IDEA case, therefore, "may be more aptly described . . . as a motion for summary adjudication, wherein the district court is required to conduct a *de novo* review of the administrative record while giving 'due weight' to the administrative findings made below." *Hanson*, 212 F. Supp. 2d at 480 (*citing Cavanagh*, 75 F. Supp. 2d at 457).

8

Findings of fact by the hearing officer "are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). If the court decides not to accept the administrative fact-finding, it must explain its departure. *Id.* The hearing officer's conclusions of law, however, merit no such deference; the court draws its own legal conclusions *de novo*. *See id.* (limiting presumptive validity to findings of fact).

The party challenging the administrative decision bears the burden of proof in showing that the hearing officer erred. *Barnett ex rel. Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991).

## ANALYSIS

A.   Due Weight

In determining how much weight is due an administrative decision in an IDEA case, the reviewing court must evaluate how the ALJ arrived at a decision and the methods she employed. *Doyle*, 953 F.2d at 105. If the ALJ completely departed from the "fact-finding norm," her conclusions are entitled to no weight. *Id*. When, however, administrative findings were "made in a

9

regular manner and have evidentiary support," they must be considered *prima facie* correct. *Waller v. Bd. of Educ. of Prince George's County*, 234 F. Supp. 2d 531, 536 (4th Cir. 1991) (*quoting Doyle*, 953 F.2d at 105).

The Plaintiffs contend that the ALJ erred in rendering her decision by failing to consider all the relevant evidence. Compl. 15. The Plaintiffs specifically object to the ALJ's failure to discuss a report produced by an expert who evaluated Christian's central auditory function. Pls.' Opp'n to Def.'s Mot. for Summ. J. 5. The ALJ marked the report as Plaintiffs' exhibit 1,[2] but did not address the test results further in her decision.

In *Waller v. Board of Education of Prince George's County*, the Court, reviewing an administrative record to determine whether an ALJ erred by failing to discuss expert testimony offered at a hearing, found that the failure to discuss the expert's testimony was "scant reason to upset the ALJ's decision." 234 F. Supp. 2d 531 at 537. Because the record included the expert's testimony, it was clear to the Court that the ALJ was aware of the expert's view and assigned evidentiary

---

[2]*Id.*

weight to it accordingly.  *Id*.  The Court concluded that the
failure to specifically discuss the testimony in the ALJ opinion
did not generate a genuine issue of material fact sufficient to
upset the presumptively correct ALJ determination.  *Id*.

The expert's report in this case was marked for
identification at the hearing and noted in the ALJ's opinion.
ALJ's Op. at 11.  Although the ALJ did not discuss the report at
length, it is clear from a review of the record that she was
fully aware of it and considered it when rendering her decision.
The ALJ's failure to thoroughly discuss the expert's report is
not reversible error because the record indicates that she
properly considered it.[3]

B.   Additional Evidence

The Plaintiffs assert that because the Court may hear
additional evidence when reviewing an administrative decision in
an IDEA case, and relevant additional evidence exists in this
case, there are necessarily questions of material fact sufficient
to deny summary judgment.  Pls.' Opp'n to Def.'s Mot. for Summ.
J. 3.

---

[3] *See also, Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1057 (7th
Cir. 1997) (finding no reversible error where ALJ showed deference to the
input of the child's teachers over psychologists and other trained experts
when determining whether FAPE was provided).

The IDEA requires the district court to hear additional evidence at the request of a party.  20 U.S.C. 1415(i)(2)(B)(ii) (2003).  The Plaintiffs contend that since the administrative hearing, Christian has been placed in another public school with a new IEP which provides greater support services, and has made greater progress than he had at Rodgers Forge Elementary.  Pls.' Opp'n to Def.'s Mot. for Summ. J. 4-5.  While evidence of improved performance may show that the prior IEP was deficient, the Plaintiffs failed to offer such evidence.  The only new evidence offered by the Plaintiffs is a copy of the new IEP. Pls.' Ex. A.  The new IEP provides more comprehensive objectives and strategies for Christian, but it does not indicate improved performance under that IEP.

It is "the plaintiffs' duty to offer any additional evidence in an effort to demonstrate that a genuine issue of material fact exists; it is not the court's responsibility to suppose what additional evidence the plaintiffs may have." *Smith v. Parham*, 72 F. Supp. 2d 570, 573 (D. Md. 1999) (*citing Jones v. Bd. of Educ. of Washington County, et al.*, 15 F. Supp. 2d 783, 786 (D. Md. 1998)).  The Plaintiffs' new evidence is insufficient to defeat the motion for summary judgment.

12

C.    Adequacy of the IEP

The Supreme Court in *Hendrick Hudson Central School District Board of Education v. Rowley*,[4] established a two-pronged test for determining whether a child's IEP complies with the requirements of the IDEA. *Id.* at 206-07. First, the court must determine whether there has been procedural compliance with the IDEA. *Id.* at 206. Second, the court must analyze whether the IEP was reasonably calculated to enable the child to receive educational benefits. *Id.* at 206-07.

1. Proper Procedure

The Plaintiffs contend that the School District neglected to indicate Christian's present levels of performance and appropriate measurement criteria in his IEPs. Compl. ¶ 47.

Under the IDEA, if a procedural defect exists, the court must assess whether it resulted in the loss of an educational opportunity for the disabled child, or was merely a technical error. *Waller*, 234 F. Supp. 2d at 540 (*citing Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir. 1997)). If the child continued to make educational progress, despite the procedural error, the IEP should be deemed sufficient. *Burke County Bd. of*

_____

[4]458 U.S. 176 (1982).

*Educ. v. Denton*, 895 F.2d 973, 980 (4th Cir. 1990).

The record reveals that when progress reports were not available for IEP team meetings, Christian's teachers submitted detailed evaluations of his performance for the parents' review. *See* Def.'s Ex. 2 (teacher feedback forms addressing Christian's strengths and needs, submitted in lieu of grade reports). In addition, each IEP lists short-term objectives and benchmarks for Christian with criteria by which teachers could evaluate his progress. *Id.* (IEPs for grades 3-5). Although the School District did not strictly comply with the technical standards of the IDEA, it made an effort to provide the parents with all the information required. Because Christian continued to make progress on nearly all of his IEP objectives during this time,[5] the technical oversights do not amount to a procedural error that deprived the child of an educational opportunity.

Even if these procedures were deemed insufficient under the IDEA, the Supreme Court's

> continued emphasis on the procedural safeguards afforded to parents convinces us that the Court was referring to the process by which the IEP is produced, rather than the myriad of technical items that must be included in the written document. . . . Adequate parental involvement and participation in formulating the IEP, not adherence to the

---

[5] *See* background *supra* p.4.

14

laundry list of items given in [the IDEA] appear to be the Court's primary concern in requiring that procedures be strictly followed.

*S.M. v. Weast*, 240 F. Supp. 2d 426, 433 (D. Md. 2003) (*quoting Doe v. Defendant*, 898 F.2d 1186, 1190-91 (6th Cir. 1990) (omission in original)).

The record establishes that the parents were actively involved in the development of each of Christian's IEPs and that they were never deprived of the opportunity to fully participate.[6] *See generally*, Def.'s Ex. 2.

There is no indication that the School District deprived Christian of an educational opportunity or that his parents were deprived of the opportunity to be involved with the development of Christian's IEPs; therefore, the procedures used by the School District did not violate the Plaintiffs' procedural rights under the IDEA.

2.  Adequate Substance

In *Rowley*, no single substantive standard was established to guide courts in determining how much educational benefit is

---

[6]For example, the parents consulted with a private speech/language pathologist and submitted the pathology report to the School District. The IEP team accepted and incorporated the parents' pathologist's report into Christian's next IEP. *See* Def.'s Ex. 2 (Oct. 4, 2001 IEP team meeting summary).

adequate to satisfy the IDEA.  *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir. 1985).  Rather, the Supreme Court left that matter to the courts for case-by-case determinations. *Id.*  To determine IEP effectiveness, the Fourth Circuit has focused on the child's abilities, educational progress under the IEP, and the services the school provided.[7]

In *Rowley*, the Supreme Court held that the intent of the IDEA was to open the door of public education to handicapped children on appropriate terms, but that there was no guarantee of any particular level of education once inside.  *Rowley*, 458 U.S. at 192.  The "basic floor of opportunity" required by the IDEA consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.  *Id.* at 201.

The instruction and special education services provided to a disabled child must provide more than trivial or *de minimis* benefits, and must be "likely to produce progress, not regression

_____

[7] *See, e.g., id.; Tice v. Botetourt County Sch. Bd.*, 908 F. 2d 1200, 1207-08 (4th Cir. 1990); *G v. Fort Bragg Dependent Sch.*, 2003 U.S. App. LEXIS 17294, *28-*32 (4th Cir. 2003).

or trivial educational advance."[8]  *Hall*, 774 F.2d at 636.

The Plaintiffs argue that Christian's lack of progress on a component of his IEP for two school quarters indicates that his IEP was inadequate and, therefore, he was denied a FAPE.  Pls.' Opp'n to Def.'s Mot. for Summ. J. 8-9.

Christian was working under the School District's IEP for his third and fourth grade years, plus the beginning of his fifth.  *See* background *supra* pp. 2-6.  During that time Christian had between eight and 17 IEP objectives by which his progress was tracked every quarter.  Def.'s Ex. 2 (IEPs for grades 3-5).

Each of Christian's progress reports indicated that he had made progress and worked successfully on the vast majority of his IEP goals.  Def.'s Ex. 2 (quarterly IEP progress reports).  The one exception was the use of phonics and structural analysis to decode unfamiliar words; here, Christian made progress each quarter except for the final two quarters of the 2000-2001 school

---

[8]Courts have found a vast range of progress levels sufficient to prove more than a trivial educational advance.  *See, e.g.*, *Tice*, 908 F.2d at 1207 (finding improvement after IEP was in place, coupled with successful completion of requirements for advancing to next grade showed adequate IEP); *Socorro Indep. Sch. Dist. v. Angelic Y.*, 107 F. Supp. 2d 761 (W.D. Tex. 2000) (finding adequate IEP even though child's abilities did not always improve from year to year); *O'Toole v. Olathe Sch. Unified Sch. Dist. No. 233*, 144 F.3d 692 (10th Cir. 1998) (finding adequate IEP where child made adequate progress toward some objectives and no progress toward others).

year.  *Id.*

The significant progress Christian made at Rodger's Forge Elementary is consistent with his high average intelligence. That he did not improve in one area for one half of a school year is insufficient to prove that Christian was deprived of a FAPE, particularly in light of the overall success of his IEP.

Because there is insufficient evidence that Christian was denied an appropriate IEP or FAPE, the Plaintiffs' cannot defeat summary judgment.

D.  The Rehabilitation Act of 1973

Section 504 of the Rehabilitation Act of 1973[9] requires that:

> No otherwise qualified individual with a disability in the United States , . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

The Plaintiffs, relying on the facts discussed above, argue that the Defendant violated § 504 of the Rehabilitation Act. Because the Plaintiffs IDEA and § 504 claims are identical, and their IDEA claim failed, their § 504 claim must fail as well.

---

[9] 29 U.S.C. § 794 (2003).

18

*Jones v. Bd. of Educ. of Washington County*, 15 F. Supp. 2d 783, 787 (D. Md. 1998) (*citing Doe v. Alabama State Dep't of Educ.*, 915 F.2d 651, 661 (11th Cir. 1990) (Plaintiff must prove same elements for § 504 claim and IDEA claim; if one fails, both fail)).

E.    42 U.S.C. § 1983 Claims

The Plaintiffs, again relying on the facts discussed above, assert that the Defendant violated their rights under 42 U.S.C. § 1983.  Section 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 (2003).

To prevail on a § 1983 claim, the Plaintiff must show: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Because the Plaintiffs have not shown that they were deprived of a right secured by the Constitution or by federal law, they cannot defeat summary judgment.

F.    Maryland Education Law

The Plaintiffs assert, based on the facts discussed above,

that the Defendant violated their rights under Maryland's education law. As a state receiving IDEA funding, Maryland has enacted laws designed to satisfy IDEA requirements. *See*, MD. CODE ANN., EDUC. §§ 8-402 to 8-407 (2003). Like the IDEA itself, Maryland law requires public school districts to provide a FAPE to disabled children. § 8-403. When determining whether a FAPE has been provided under Maryland law, all decisions are to be made "in conformance with applicable federal law." § 8-407.

The Plaintiffs, therefore, must show violations of their rights under the IDEA to prove violations of Maryland education law. Because the Plaintiffs cannot prove that their rights under the IDEA were violated, they cannot prove violations of Maryland education law. Accordingly, the Plaintiffs cannot avoid summary judgment.

CONCLUSION

For the reasons discussed above, the Defendant's motion for summary judgment will be granted.

October 6, 2003
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

20